UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| K. JARRED FLYNN, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:19-cv-00094 |
| CROSSVILLE HOUSING AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On October 26, 2021, the Magistrate Judge issued a Report and Recommendation ("R&R") (Doc. No. 103) recommending that the Court grant Crossville Housing Authority's ("CHA") Motion for Summary Judgment (Doc. No. 68) and deny K. Jarred Flynn's Motion for Summary Judgment (Doc. No. 44). On November 15, 2021, the Court approved and adopted the R&R after determining that Flynn had not filed an objection. (Doc. No. 112). After doing so, the Court determined that Flynn had never received a copy of the R&R. (Doc. No. 115). The R&R was resent to Flynn, who has filed objections. (Doc. Nos. 117, 120). CHA has filed a response. (Doc. No. 121). For the following reasons, Flynn's objections will be overruled and the R&R will be approved and adopted.

**I.**

The summary judgment record establishes the following material facts.

Flynn was in an automobile accident while working as a maintenance aid for CHA. Following the accident, he was treated for back pain that forced him to repeatedly miss work or leave early throughout March, April, May, and June 2019.

Pursuant to CHA policy, an employee missing work for more than three consecutive days

is required to provide a doctor's note excusing his or her absence. On April 24, 2019, after missing several days of work, Flynn submitted a note from his primary care physician, Dr. David Sapp, stating that he was "limited to how many hours a day he can work due to back injury." CHA rejected the note because it did not specifically address Flynn's injury or contain any work restrictions or recommendations justifying that Flynn remain off work. In particular, CHA determined that the note was "vague and could have many meanings." CHA then issued Flynn a disciplinary write-up for extended absences from work without a medical excuse. (Doc. No. 42 at 47).

On May 22, 2019, Flynn applied for workers' compensation benefits. Two days later, Flynn's doctor released him to return to work, again without a diagnosis, restrictions, or limitations. CHA again rejected the note, explaining that it was not specific enough to cover the days Flynn had missed.

On June 4, 2019, CHA instructed Flynn that he could not return to work until he provided a valid doctor's note for the days he missed work. (Doc. No. 42 at 60). Flynn responded that his prior doctor's notes should suffice. (Id. at 61–62). Nevertheless, Flynn reported to work for several days in June, but he would often leave after a few hours due to his injury. On June 11, 2019, CHA informed Flynn that:

> Since we believe your lack of reporting to duty is due to a medical reason and may be considered a disability, you may request a reasonable accommodation for your limitations. Please submit the attached authorization form and return to us by June 14, 2019. We will then contact your specified physician for information on your disability and any restrictions you may have. With this information we can consider a request for accommodation.

(Doc. No. 42 at 112). Flynn did not respond to CHA's request for authorization or additional medical information. (Doc. No. 82 ¶ 57; see also Doc. No. 82-4 at 11–12). CHA also advised Flynn that he could apply for FMLA leave to cover his absence from work, but Flynn did not do so.

When Flynn repeatedly attempted to return to work, CHA again instructed him to first obtain proper medical clearance. He again refused to do so. On June 25, 2019, Flynn stopped reporting to work. More than a year later, on July 20, 2020, CHA terminated Flynn. (Doc. No. 42-1).

After obtaining a right to sue letter from the EEOC, Flynn brought this action. He alleges two claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, because CHA: (1) failed to accommodate his disability and (2) retaliated against him by assigning him more difficult tasks and by pressuring him to take FMLA leave after he filed his workers' compensation claim. Flynn settled his workers' compensation case in November 2019. (Doc. No. 82 ¶ 77). Flynn's ADA claims are the subject of the pending, fully briefed cross motions for summary judgment. (Doc. Nos. 44, 55, 57, 68, 82, 83).

## II.

Because Flynn objects to portions of the R&R, the Court reviews his objections *de novo*. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). *De novo* review requires that the Court evaluate the evidence without granting any deference to the Magistrate Judge's findings and conclusions. See Matthews v. Weber, 423 U.S. 261, 270–71 (1976); United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985) (noting that the district court must "weigh the evidence for itself and make an independent determination of the dispositive issues"). After reviewing the evidence, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C).

## III.

Flynn's objections fall under three categories. First, he argues that the Magistrate Judge erred in recommending denial of his motion for summary judgment because he "was already granted Summary Judgment" earlier in this case. (Doc. No. 117 at 1–2). Second, he argues that the Magistrate Judge erred in concluding that he cannot succeed on his ADA failure to accommodate

3

claim because he provided CHA his medical justification for his absence from work, and, alternatively, the Magistrate Judge failed to consider EEOC guidance. (Id. at 16). Third, he argues that the Magistrate Judge erred in concluding that when CHA made him work harder, pressured him into FMLA leave, and terminated him in response to his workers' compensation claim that constituted an adverse employment action. (Id. at 40).

### A. The Court Did Not Grant Flynn's Motion for Summary Judgment

Flynn first argues that the R&R's findings are erroneous because he "was already granted summary judgment" in an April 26, 2021 Memorandum Order by the Magistrate Judge. (Doc. No. 117 at 1 (citing Doc. No. 56)). He is mistaken. The April 26 Order does nothing more than excuse his untimely filing of his Motion for Summary Judgment. (Id. at 7) ("The Court will construe Flynn's motion for leave to file a motion for excusable neglect as a motion to overlook the untimeliness of his . . . motion for summary judgment."). There is no order granting Flynn summary judgment. Accordingly, Flynn's objection that the Court previously granted him summary judgment will be overruled.

### B. The Magistrate Judge Correctly Recommended Summary Judgment on the ADA Failure to Accommodate Claim

The Magistrate Judge correctly set out the legal framework for Flynn's reasonable accommodation claim and the interactive process requirement. "In order to establish a prima facie case for failure to accommodate, a plaintiff must show that (1) [he] was disabled within the meaning of the ADA, (2) [he] was otherwise qualified for [his] position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the defendant failed to provide the necessary accommodation." Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs., 974 F.3d 652, 669 (6th Cir. 2020) (citing Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018)). After

4

Case 2:19-cv-00094  Document 123  Filed 07/11/22  Page 4 of 11 PageID #: 3555

an employee requests an accommodation, the employer and employee must engage "in an 'informal, interactive process' . . . to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" Id.; see also 29 C.F.R. § 1630.2(o)(3) (describing the interactive process). Both parties "have a duty to participate in good faith," Kleiber v. Honda of Am. Mfg., 845 F.3d 862, 871 (6th Cir. 2007), and "an employer is not responsible for a breakdown in the interactive process unless the employer actually failed to offer a reasonable accommodation." Lockard v. Gen. Motors Corp., 52 F. App'x 782, 788 (6th Cir. 2002).

The Magistrate Judge concluded that "Flynn cannot succeed on his failure-to-accommodate claim because no reasonable jury could find that he participated in the interactive process in good faith." (Doc. No. 103 at 11). The Magistrate Judge reasoned that Flynn "unilaterally implemented a plan to set his own hours on a daily basis" rather than respond to CHA's request for more specific medical information or engage in a dialogue to "determine a reasonable accommodation of his injury." (Id. at 12–13). Flynn objects to the Magistrate Judge's conclusion on two grounds, neither of which create a genuine dispute of material fact to avoid summary judgment.

First, Flynn argues that he made a "good faith effort to participate in the 'interactive process'" when he "submitted his doctor's note" to CHA stating that he was "limited to how many hours a day he can work due to back injury." (Doc. No. 117 at 26). He contends the burden then fell on CHA to uphold its end of the bargain by providing him "with a workmans [sic] comp doctor, that is required by law, that would have assigned [him] with a physical limitation[s], and a doctor's note, with the specifics of just what [he] was and was not capable of." (Id. at 28). Whether CHA provided Flynn a workers' compensation doctor, however, is not germane to whether he engaged

5

in the interactive process.

The Workers' Compensation Laws, the FMLA, and the ADA are all employment related protections; however, they each serve a different role and impose a different legal standard. Tennessee's workers' compensation law requires "an injury . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." Tenn. Code Ann. § 50-6-102(14). The ADA protects employees and applicants from discrimination in the terms and conditions of employment for a mental or physical disability that "substantially limits a major life activity." Holiday v. City of Chattanooga, 206 F.3d 637, 642 (6th Cir. 2000) (citing 42 U.S.C. § 12112(a)); see also 42 U.S.C. § 12102(2). The Act defines "major life activities" as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2). The FMLA provides limited unpaid leave from work when a worker has a "serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). It requires an "illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital, hospice, or residential medical care facility," or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Thus, whether CHA provided Flynn a workers' compensation doctor to assess his alleged workers' compensation injury would have no bearing on whether Flynn satisfies the ADA's or FMLA's requirements for protections. See Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008) (holding that "the ADA is not a general protection for medically afflicted persons"); see also Lamb v. Bell, No. 98-5751, 1999 U.S. App. LEXIS 22201, at *14–15 (6th Cir. Sept. 9, 1999) (finding that an employer and employees' previous workers' compensation discussions regarding injury do not demonstrate disability under the ADA).

Second, Flynn contends that the Magistrate Judge neglected to consider certain EEOC guidelines regarding reasonable accommodations that, he argues, show CHA failed to engage in the interactive process. (Doc. No. 117 at 20, 26–27). They are:

- Guidance Note 1: How must an individual request a reasonable accommodation?

- Guidance Note 4: When should an individual with a disability request a reasonable accommodation?

- Guidance Note 5: What must an employer do after receiving a request for reasonable accommodation?

- Guidance Note 8: Are there situations in which an employer cannot ask for documentation in response to a request for reasonable accommodation?

- Guidance Note 9: Is an employer required to provide the reasonable accommodation that the individual wants?

- Guidance Note 10: How quickly must an employer respond to a request for reasonable accommodation?

- Guidance Note 20: When an employee requests leave as a reasonable accommodation, may an employer provide an accommodation that requires him/her to remain on the job instead?

- Guidance Note 22: Must an employer allow an employee with a disability to work a modified or part-time schedule as a reasonable accommodation, absent undue hardship?

EEOC Enforcement Guidance on Reasonable Accommodation ¶¶ 1, 4–5, 8–10, 20, 22, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting. The Court disagrees.

EEOC Guidance Note 1 provides that "[w]hen an individual decides to request accommodation, the individual or his/her representative must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. They may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation.""

Id. ¶ 1. Guidance Note 4 provides that "[a]n individual with a disability may request a reasonable accommodation at any time during the application process or during the period of employment." Id. ¶ 4. Flynn properly made a request for a reasonable accommodation; however, he did not cooperate with CHA after making his request by engaging in the interactive process.

Guidance Note 5 is merely a recitation of the interactive process in which Flynn did not participate. It provides an "individual with a disability should engage in an informal process" with the employer "to clarify what the individual needs and identify the appropriate reasonable accommodation." Id. ¶ 5. Moreover, "[t]he employer may ask the individual relevant questions that will enable it to make an informed decision about the request." Id. Flynn relies upon Note 5 to argue that CHA did not engage in the interactive process because it rejected his doctor's notes. (Doc. No. 117 at 29). But Note 5 applies to him as much as it does to CHA. The summary judgment record reflects that CHA engaged in the process by asking Flynn "relevant questions" for medical information that would "enable it to make an informed decision about" his request for an accommodation. Id. Flynn did not respond. The Magistrate Judge correctly found his failure to do so was dispositive of his ADA claim.

Guidance Note 8 provides that "[a]n employer cannot ask for documentation when: (1) both the disability and the need for reasonable accommodation are obvious, or (2) the individual has already provided the employer with sufficient information to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested." EEOC Enforcement Guidance on Reasonable Accommodation ¶ 8. Neither applies here. Flynn's back injury was not visible to CHA, and he did not provide sufficient information substantiating the injury, leading to CHA's request for additional medical information. Ali v. McCarthy, 179 F. Supp. 3d 54, 79 (D.D.C. 2016) (rejecting plaintiff's reliance on Guidance Note 8 because his need for an accommodation was not

obvious and he had failed to provide notice substantiating he had a disability under the ADA).

Guidance Notes 9, 10, 20, and 22 all deal with an employer's responsibilities in selecting a reasonable accommodation *after* it engages with the employee in an interactive process. EEOC Enforcement Guidance on Reasonable Accommodation ¶ 9, 10, 20, 22. But Flynn did not engage in the interactive process when he failed to complete the authorization form for additional medical information, so CHA's responsibilities were not triggered. See Kaltenberger v. Ohio Coll. Of Podiatric Med., 162 F.3d 432, 437 (6th Cir. 1998) (holding that an employer is "not obligated to provide accommodation until [the] plaintiff had provided a proper diagnosis of [his disability] and requested specific accommodation"); see Kennedy v. Superior Printing Co., 215 F.3d 650, 656 (6th Cir. 2000) ("An employer need not take the employee's word for it that the employee has [a disability] that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement.") (citing E.E.O.C. v. Prevo's Family Mkt., Inc., 135 F.3d 1089, 1094–95 (6th Cir. 1998)).

In sum, the EEOC Guidance Notes relied upon by Flynn do not change the legal reasoning of the R&R, and critically none require a different conclusion that Flynn failed to engage in the interactive process under the ADA. Accordingly, Flynn's objection that the Magistrate Judge erred in recommending dismissal of his reasonable accommodation claim will be overruled.

C. The Magistrate Judge Correctly Recommended Summary Judgment on Flynn's ADA Retaliation Claim

The R&R applied the McDonnell Douglas framework to conclude that Flynn could not "establish a prima facie case of retaliation because he cannot show that . . . CHA's allegedly retaliatory acts constitute adverse employment actions as a matter of law." (Doc. No. 103 at 16). Flynn objects because CHA subjected him to several adverse employment actions, including making him work harder, pressuring him into taking FMLA leave, and eventually terminating him

in response to his workers' compensation claim. (Id. at 40, 49). To satisfy the adverse employment action element, an employee must present evidence of conduct that would "dissuade a reasonable worker" from engaging in protected activity. Wyatt v. Nissan N. Am., Inc., 999 F.3d 400, 420 (6th Cir. 2021) (citing Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)). Flynn has not done so. Although he argues that CHA assigned him difficult tasks after his accident, Flynn concedes that he was asked to perform the same job rather than "shifting [his assignments] to something that would have been easier on [him]." (Doc. No. 82-4, Flynn Dep. at 253:7–254:1). An employer's expectation that an employee undertake the same workload after engaging in a protected activity does not constitute an adverse employment action. Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885–86 (6th Cir. 1996) (finding no adverse action where the plaintiff's "duties were not materially modified").

Nor is CHA's alleged pressuring of Flynn to take FMLA leave an adverse employment action. Flynn admitted that CHA "offered for him to apply for FMLA leave or provide additional statement[s] about his work restrictions" in order to determine a reasonable accommodation, not in response to his protected activity. (Doc. No. 117 at 7). It does not logically follow how an employer's suggestion that an employee take FMLA leave that may benefit the employee would dissuade the employee from engaging in protected activity. Indeed, as the Magistrate Judge found, FMLA leave would stand to benefit, not hinder, Flynn.

Nor could a reasonable juror conclude that Flynn's eventual termination was causally connected to his workers' compensation filings. Here, more than a year elapsed between Flynn's May 2019 workers' compensation filings and his July 20, 2020 termination. (Doc. No. 82 ¶¶ 21, 47, 81; see also Doc. No. 42-1). Such a large time gap "does not 'raise the inference that [the] protected activity was the likely reason for the adverse action.'" Lindsay v. Yates, 578 F.3d 407,

418 (6th Cir. 2009); Blizzard v. Marion Tech. Coll., 698 F.3d 275, 288 (6th Cir. 2012) (finding no causal connection between college employee's protected activity and employee's termination where employee's protected activity occurred more than a year before her termination); Dixon v. Gonzales, 481 F.3d 324, 334 (6th Cir. 2007) ("This Court typically [has] found the causal connection element [is] satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity."). Accordingly, Flynn's objection that the Magistrate Judge erred in recommending dismissal of his retaliation claim will be overruled.

## IV.

For the foregoing reasons, Flynn's objections will be overruled, the Magistrate Judge's R&R (Doc. No. 103) will be approved and adopted, Flynn's Motion for Summary Judgment (Doc. No. 44) will be denied, CHA's Motion for Summary Judgment (Doc. No. 68) will be granted, and this case will be dismissed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE